UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


JIMMY W. HUDSON, and WIFE,      )
DEBORAH K. HUDSON,          )
                Plaintiffs,      )
                             )
v.                           )          NO. 2:06-CV-01
                           )
UNITED STATES OF AMERICA,    )
                Defendant.      )


## MEMORANDUM OPINION AND  ORDER


        The plaintiffs in this negligence action against the United States of America (the "Government") have moved, pursuant to Fed. R. Civ. P. 60(b), to set aside the order granting summary judgment and the judgment entered in favor of the Government on December 15, 2006 [Doc. 16].  The plaintiffs have also moved, pursuant to Fed. R. Civ. P. 59(e), to alter or amend the judgment "to correct what Plaintiffs believe to be clear legal error." [Doc. 18].  The Government  has responded [Docs. 17 and 25].  The plaintiffs have also moved, assuming a grant of their Rule 59 and/or 60 motions, to extend the time for them to conduct additional discovery before the Court rules on the Government's motion for summary judgment.  These  motions will be denied.

# I.  *Prior Proceedings*

The plaintiffs filed their complaint on January 3, 2006, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, 2671 *et seq*., alleging negligence of the Government related to medical care received by the plaintiff, Jimmy W. Hudson, at the Department of Veterans Affairs (the "VA") medical facility at Mountain Home, Tennessee, and seeking damages for alleged personal injury [Doc. 1].  The VA operates hospitals and medical centers at which it provides medical services through its own employees and medical staff, as well as certain "contract physicians." [Doc. 1, ¶ 5].

Plaintiff, Jimmy W. Hudson, received medical care at the VA facility at Mountain Home during 2002-2003 and alleges that his injuries were proximately caused by acts of malpractice committed by Dr. Steven Hamel and Dr. Brannon Thomas, neurosurgeons employed full time by Appalachian Neurological Clinic, PC, ("ANC") with which the VA had contracted to provide neurological services to veterans.  The VA did not control or supervise the day-to-day operations of the neurological services provided by ANC or its physicans.  ANC was an independent contractor of the Government.  (See generally Doc. 21, Plaintiffs' Response To Defendant's Statement Of Material Facts).

On March 24, 2006, the Government filed an answer to the plaintiffs' complaint. [Doc. 6]. Among the affirmative defenses asserted in the Government's answer was the Court's lack of subject matter jurisdiction under the FTCA. More specifically, the Government alleged that it is immune from civil suit based on the alleged negligence of an independent contractor of the Government and, to the extent plaintiff alleges that the Government improperly selected independent contractors to provide medical services or negligently monitored or supervised such contractors, it is protected by the discretionary function exception of the FTCA, 28 U.S.C. § 2680(a).

On August 16, 2006, the parties jointly filed a report of their Fed. R. Civ. P. 26 planning meeting and "discovery and litigation plan." The discovery plan identified subject matter jurisdiction as an issue upon which discovery was needed and contained the parties' agreement that discovery on jurisdictional issues would be completed by November 15, 2006, the deadline set by the Court for the filing of dispositive motions. [Doc. 9]. On November 15, 2006, the Government filed a motion to dismiss and/or for summary judgment on the ground of lack of subject matter jurisdiction, along with a statement of material facts, supporting memorandum and exhibits. [Doc. 10]   Plaintiffs did not timely respond to the motion for summary judgment nor seek an extension of time to do so. On December 15, 2006, the Court granted the Government's motion for summary judgment, holding that the Court

lacked subject matter jurisdiction over the claims of alleged medical negligence by Drs. Hamel and Thomas, who are not employees of the Government, but rather employees of an independent contractor. Additionally, the Court held that claims against the Government for alleged negligence in the selection of these neurosurgeons could not be maintained because such decisions fell within the discretionary function exception of the FTCA and the Government was immune from suit on these claims. [Doc. 13]. [1] The plaintiffs filed their Rule 60 motion on December 18, 2006, and their Rule 59 motion on December 22, 2006. These motions have now been fully briefed by the parties and the motions are ripe for disposition.

II.    ***Analysis and Discussion***

    1.    ***The Rule 60(b) Motion***

Rule 60(b), Fed. R. Civ. P., provides, in relevant part:

> **(B) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or

---

[1] Plaintiffs erroneously claim in their Rule 60 motion that the Court's order [Doc.13] was predicated exclusively on its finding that the two neurosurgeons were not employees of the United States. While the Court in its order did not discuss the plaintiffs' claims in the detail it might otherwise have done had the plaintiffs responded timely to the motion for summary judgment, the Court clearly considered both the question whether or not Drs. Hamel and Thomas were employees of the Government or employees of an independent contractor and the plaintiffs' allegations of negligence on the part of the Government in hiring, selecting and supervising its independent contractors. To the extent plaintiffs claim that the Court did not consider its independent claims of negligence against the Government, plaintiffs are mistaken.

a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake; inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. . .

Of the numerous grounds for relief from an order stated in Rule 60, plaintiffs in their motion suggest no basis for setting aside the December order other than to generally allege that the court erred legally in its conclusions.  Plaintiffs do suggest another basis – excusable neglect –in one of their later pleadings.  (See Doc. 23, p. 4).   The claimed excusable neglect appears to be based on the affidavit of D. Bruce Shine, one of the three attorneys representing the plaintiffs in this case,  filed in support of plaintiffs' Rule 60 motion.  Mr. Shine acknowledges receipt of the Government's motion for summary judgment  on November 15, 2006, but states that he was away from his office from November 20 through December 14, 2006, except for December 4 – 8.  During the week of December 4, Mr. Shine was advised by plaintiffs' co-counsel, Thomas H. Torbett, that agreement had been reached with counsel for the Government to extend plaintiffs' time for response to January 22,

2007. On the afternoon of December 15, 2006, Mr. Shine began to work on plaintiffs'

response to the Government's motion and, in reviewing his file, noticed that the oral

agreement had never been reduced to writing or submitted to the Court for approval.

Late in the afternoon of December 15, Mr. Shine received an e-mail copy of the

Court's opinion and judgment dismissing plaintiffs' complaint. After the receipt of

the opinion and judgment, Mr. Shine filed a motion to extend the time to respond.

[Doc. 15]. Mr. Shine's affidavit also states that plaintiffs' co-counsel and Mr. Shine's

law partner, Donald F. Mason, Jr., was out of the office from September 1 through

December 18 as the result of an automobile accident.

As set forth above, Rule 60(b)(1) permits a district court to relieve a party

or a party's legal representative from a final judgment for mistake, inadvertence,

surprise, or excusable neglect. As noted, plaintiffs premise their claim here on the

neglect of their attorneys. Neglect, in the context of Rule 60(b)(1), is given its

ordinary meaning which includes "late filings caused by inadvertence, mistake, or

carelessness, as well as by intervening circumstances beyond the party's control."

*Jinks v. Allied Signal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001) (quoting *Pioneer Inv.*

*Servs. Co. v. Brunswick Associates*, 507 U.S. 380 (1993)). It appears quite clearly that

the attorneys for the plaintiffs were neglectful in failing to timely respond to the

Government's motion for summary judgment and/or in failing to ask the Court to approve the parties' agreement for an extension of time within which to file the response.

Of course, neglect alone is not sufficient to establish a right to relief under Rule 60(b)(1); the neglect must be <u>excusable</u> . The failure to file a response or to request an extension of time to file is inexcusable neglect. *Kendall v. Hoover Co.*, 751 F.2d 171, 175 (6th Cir. 1984). That is precisely what happened here in that it would have been a simple matter for plaintiffs' attorneys to file a motion for an extension of time to respond. While Mr. Shine's failure to do so is explained somewhat by his absence from his office, <u>no</u> explanation is given as to why Mr. Torbett could not have filed the motion. There was obviously a misunderstanding or miscommunication of some sort between plaintiffs' attorneys here; however, the facts in this case do not establish excusable neglect justifying relief under Rule 60(b)(1).

If relief is available to the plaintiffs under Rule 60(b), it is under the "catchall" provision of Rule 60(b)(6), which permits relief from a judgment for "any other reason [beyond those found in 60(b)(1)–(5)] justifying relief from the operation of the judgment." However, relief under Rule 60(b)(6) is rare and applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule. Consequently, relief under Rule 60(b)(6) is available

in only unusual and extreme situations where principles of equity mandate relief. *See Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 513, 524 (6th Cir. 2001). Other than their assertion of legal error, plaintiffs have offered no exceptional or extraordinary circumstances which would justify relief under Rule 60(b)(6). As more fully set forth below, there is no legal error in the Court's summary judgment holding, and, therefore no extraordinary or exceptional circumstances to vacate the judgment.

2. ***The Rule 59(e) Motion***

A district court may grant a Rule 59(e) motion to alter or amend judgment only if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). Plaintiffs allege a clear error of law in this case. For the reasons set forth below, however, the record in this case does not establish any clear legal error in the Court's prior order on the Government's motion for summary judgment and the Rule 59(e) motion is without merit.

Since the plaintiffs have now fully responded to the Government's motion for summary judgment (See Docs. 19 and 21), this Court will consider the

legal issues raised by this case more fully than it did in its original opinion on the Government's motion for summary judgment and in the context of plaintiff's response.

3. ***Sovereign Immunity and The Federal Tort Claims Act***

The doctrine of sovereign immunity prohibits suits against the United States unless Congress has consented to the Government being sued. *See Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004) (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976). Through its enactment of the FTCA, Congress has waived, to a limited extent, the United States' immunity from suits:

> For injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1)

This waiver of sovereign immunity, however, is subject to a number of exceptions, including the discretionary function exception codified at 28 U.S.C. § 2680(a) (stating that 28 U.S.C. § 1346(b)'s waiver of sovereign immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to

exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"). If one of the exceptions, such as the discretionary function exception, applies to the conduct at issue and Congress has not otherwise waived the United States' immunity, then a district court lacks subject matter jurisdiction over the action. *Ritche v. United States*, 119 F.3d 447, 450 (6th Cir. 1997), *cert. denied* 523 U.S. 1047 (1998). Thus, the United States is made liable by the FTCA "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, unless an exception such as the discretionary function exception applies, in which case there is no waiver of sovereign immunity.

A. ***Plaintiffs' Allegations of Negligence***

Plaintiffs' complaints of negligence are stated in paragraphs 38 and 39 of their complaint as follows:

> 38. The Defendant its agents, and employees, owe duties to Plaintiff to investigate its employees, agents and contract physicians, and to hire only those meeting acceptable standards of education, professionalism, and reliability. These duties to Plaintiff were breached.
>
> 39. The Defendant, its agents and employees, in the course of undertaking to provide healthcare services to Hudson, owned him the following duties:
>> (A)   The duty to timely diagnose and treat his medical conditions.
>> (B)   The duty to assure that he receive timely

treatment from qualified and competent healthcare professionals.

(C) The ongoing duty to monitor and evaluate his condition, treatment and care provided by its employees, agents and contract health care employees.

(D) The duty to assure medical care and treatment which equals or exceeds the standard of care existing in the community in which the care was rendered, and that which prevails in similar communities.

The defendant, its employees, agents and contract providers were negligent and did not meet their duties relative to Hudson. As a direct and proximate result Hudson and his wife have been damaged.

The United States reasonably characterizes the acts of negligence complained of by the plaintiffs in their complaint as: (1) the VA made the wrong decision when it contracted neurological services; (2) the VA selected the wrong contractor to provide neurological services; and (3) the VA did not provide proper oversight of the contractor. The plaintiffs do not disagree with the Government's characterization. At its most basic, plaintiffs' complaint seeks to hold the United States liable for acts of medical malpractice committed by Drs. Hamel and Thomas and claims that the United States was negligent in its hiring and supervision of ANC. The plaintiffs admit that Drs. Hamel and Thomas were full time employees of ANC, that the United States contracted with ANC to provide neurological services and that

the United States did not control or supervise the day-to-day operations of the neurological services provided by ANC or its employee physicians. Thus, the complaint of the plaintiffs can be read to allege acts of medical negligence on the part of Drs. Hamel and Thomas and acts of negligence by employees of the United States in the hiring and supervision of Drs. Hamel and Thomas.

1. ***Negligence by an Independent Contractor***

By its plain terms, the FTCA waives immunity only for acts of employees of the Government while acting within the scope of their office or employment. The term "employee of the Government" is defined by the Act as including ". . . officers or employees of any federal agency, members of the government or armed forces of the United States, . . . and the persons acting on behalf of a federal agency in an official capacity, . . ." 28 U.S.C. § 2671. The term federal agency is defined in the statute as not including "any contractor with the United States." The plaintiffs concede that ANC was an independent contractor of the United States, contracted by the VA to provide neurological services to veterans, and that Drs. Hamel and Thomas were employees of the Government's independent contractor. Because Drs. Hamel and Thomas were not employees of any federal agency, the Government cannot be held liable for any acts of negligence committed by them. *Id.*;

*Tsosie v. United States*, 452 F.2d 1161, 1162–63 (10th Cir. 2006).

2.    *Plaintiffs' Claims of Legal Error and The Discretionary Function Exception*

Although plaintiffs acknowledge that Drs. Hamel and Thomas were employees of ANC, and not of the United States, and that ANC was an independent contractor of the United States, they argue, nevertheless, that the Government can be held liable for negligence by an independent contractor.[2]  (See Doc. 19, Plaintiffs' Memorandum In Opposition To Defendant's Motion For Summary Judgment. . . , p. 1).  Relying on *Olson v. United States*, 546 U.S. 43 (2005), the plaintiffs argue that immunity has been waived because "[u]nder Tennessee law the United States has been held liable under the nondelegable duty doctrine for the negligence of an independent contractor under the state's dangerous instrumentality exception to the general rule of non-liability of an employer of an independent contractor",  (citing *Pierce v. United States*, 142 F. Supp. 721 (E.D. Tenn. 1955), *aff'd* 235 F.2d 466 (6th Cir. 1956) and *Mahoney v. United States*, 216 F.Supp. 523 (E.D. Tenn. 1962)), ("*Mahoney I*").

There are several reasons why plaintiffs' argument lacks legal merit.  As an initial matter, plaintiffs misunderstand the Supreme Court's holding in *Olson*.

---

[2]  Although plaintiffs make the argument throughout their pleadings that the Government can be held liable for the negligence of its independent contractors, it is also clear that their complaint can be read to allege negligence on the part of the Government itself in the investigation and hiring of its contractors.  (See para. 3 of the plaintiffs' complaint).

Secondly, even if they are correct in their reading of *Olson,* the *Pierce/Mahoney I* rule does not apply to this case.  Even if *Mahoney I* is still viable legally, which is doubtful, this case is factually inapposite  to *Mahoney*.

In *Olson*, the Supreme Court considered a claim against the United States of negligence by federal mine inspectors who allegedly failed to conduct inspections of mines as <u>required</u> by the Federal Mine Safety and Health Act.[3]  The district court dismissed the lawsuit in part because the allegations were insufficient to show that Arizona law would impose liability on a private person in similar circumstances.  The Ninth Circuit reversed on grounds that the FTCA waived sovereign immunity for unique governmental functions where a state or municipality would be liable under the law.  The Supreme Court reversed the Ninth Circuit, holding that 28 U.S.C. § 1346(b)(1) means just what it says, *i.e.*,  that the United States waived sovereign immunity under circumstances where the United States, if a private person (not the United States if a state or municipal entity under the same circumstances) would be

---

[3]  Although not clear from the Supreme Court's opinion, the opinion of the Ninth Circuit, *See* 362 F.3d 1236, makes it clear that *Olson* did not deal with acts of alleged negligence falling within the discretionary function exception but rather with the failure of federal mine inspectors to follow a mandatory statutory directive.  Thus, there was a clear waiver of immunity and the only issue before the Supreme Court was whether liability would be imposed on the United States only when liability would attach to a private actor or, when "unique governmental functions" were involved, liability would attach when state and municipal actors would be liable.

liable.[4]

Plaintiffs reading of the *Olson* decision – *i.e.,* that liability is imposed on the United States for any negligent conduct actionable under state law – renders meaningless and completely eviserates the exceptions contained in the FTCA. "Since the United States can be sued <u>only</u> to the extent that it has waived immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver." *United States v. Orleans*, 425 U.S. 807, 814 (1976), (citing *Dalehite v. United States*, 346 U.S. 15, 30-31 (1953)) (emphasis added). This was acknowledged in the most recent pronouncement of the United States Supreme Court on the FTCA, *Ali v. Federal Bureau of Prisons*, 128 S. Ct. 831, 841-42 (2008) ("The Federal Tort Claims Act (FTCA) allows those who allege injury from governmental actions over a vast sphere to seek damages for tortious conduct. The

---

[4] One of the cases abrogated by *Olson* was *Hines v. United States*, 60 F.3d 1442 (9th Cir. 1995), a case involving the issue of whether the United States Postal Service was liable for negligently issuing a permit to a bulk mail delivery driver who, at the time of an accident, was under the influence of drugs and alcohol. The bulk mail delivery driver was an independent contractor of the Government transporting mail in bulk between various cities in California. One of the theories of the plaintiff in his suit against the United States under the FTCA was that the Postal Service had negligently entrusted the vehicle to Smith. The district court had granted summary judgment to the United States on the negligent entrustment theory and the Ninth Circuit had reversed. Plaintiffs note that the Supreme Court, in *Olson*, abrogated the Ninth Circuit holding. The opinion in *Olson,* however, abrogated the Ninth Circuit's holding because it had applied the wrong standard to its inquiry in the *Hines* case, *e.g.* whether state a state or municipality would be subject to liability for the performance of these activities rather than whether a private person would be. *Hines*, when read closely, like *Olson*, however, did not deal with acts of negligence which fell within an exception to the FTCA, but rather with a failure by the Government to follow a mandatory (i.e. not discretionary) regulatory directive. Postal Service regulations <u>required</u> that drivers for bulk carriers be screened, and the failure to do so gave rise to tort liability under California law.

enacting Congress enumerated 13 exceptions to the Act's broad waiver of sovereign immunity, all of which shield the Government from suit in specific instances. These exceptions must be given careful consideration in order to prevent interference with the governmental operations described." Kennedy, J., dissenting).

The plaintiffs correctly argue that liability attaches to the United States where it would also attach to a private person under state law where the alleged acts of negligence occurred. They incorrectly argue, however, that liability attaches *whenever* liability would attach to a private person without first giving due regard to the FTCA's exceptions. On the contrary, both the FTCA itself and relevant precedent make it abundantly clear that plaintiffs' position is correct only if there has first been a waiver of sovereign immunity and, when the alleged negligent conduct is covered by one of the FTCA's exceptions, such as the discretionary function exception, 28 U.S.C. § 2680(a), there is no waiver of immunity. In other words, § 2680(a) and all other FTCA exceptions limit the FTCA's waiver of sovereign immunity by precluding liability on the part of the United States *even if* a private person would be liable under state law.

And, whether a particular cause of action constitutes a claim that is excluded from the FTCA is a question of federal law, not state law. *Laird v. Nelms*, 406 U.S. 797 (1972); *United States v. Neustadt*, 366 U.S. 696 (1961). Thus, the

question of whether the alleged acts of the Government in this case constitute negligence under Tennessee state law is irrelevant if the acts fall within the coverage of one of the FTCA exceptions, depriving the Court of subject matter jurisdiction. See *Dykstra v. United States*, 140 F.3d 791, 795 (8th Cir. 1998); *Idaho v. United States*, 666 F.2d 444 (9th Cir. 1982).

The FTCA excludes from liability "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved was abused." 28 U.S.C. § 2680(a). While acknowledging that a staffing decision is generally a discretionary function, plaintiffs argue, however, that the selection of an independent contractor, known by the VA to be a person neither fit nor proper for the contracted work, falls outside the discretionary function exception. A review of relevant case law reveals a myriad of cases which hold that the hiring, training, and supervising of employees are discretionary in nature and fall within the discretionary function exception. *United States v. Gaubert*, 499 U.S. 315, 332–34 (1991); *United States v. Varig Airlines*, 467 U.S. 797, 819–20 (1984); *Wood v. United States*, 290 F.3d 29 (1st Cir. 2002); *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000)*, Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d1207 (D.C. Cir. 1997); *Layton v. United States*, 984 F.2d 1496 (8th Cir.), *cert*

*denied*, 510 U.S. 877 (1993); *Fortney v. United States*, 912 F.2d 722 (4th Cir. 1990); *Michael v. United States*, 751 F.2d 303, 307 (8th Cir. 1985).

The rule is the same for the selection and supervision of an independent contractor. *Williams v. United States*, 50 F.3d 299, 309 (4th Cir. 1995)*; Layton*, 984 F.2d at 1501-02. Likewise, decisions as to the extent of supervision are discretionary. *Varig Airlines*, 467 U.S. at 819-20 ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."). Even where there is a claim, as here, that the contractor chosen is incompetent and the Government had knowledge of the alleged incompetency, "the award of contracts by the Government is a 'discretionary function or duty,' in the exercise of which it is exempt from liability under the Federal Tort Claims Act. 28 U.S.C. § 2680(a) and *Dalehite v. United States*, 346 U.S. 15, 42, 73 S. Ct. 956, 97 L. Ed. 1427 (1953)." *Gowdy v. United States*, 412 F.2d 525–529 (6th Cir. 1969).

Plaintiffs also make an argument that the discretionary function exception should not apply because, they argue, their suit charges a failure of the Government to act in accord with a specific mandatory directive and they point to language in the addendum to the contract with ANC in support of their argument. More specifically, plaintiffs point to language in C.2-Addendum To FAR 52.212-4 to the contract with

ANC, which provides:

> QUALIFICATIONS:
> a. Personnel assigned by the Contractor to perform the services covered by this contract shall be licensed in a State, Territory, or Common Wealth of the United States or the District of Columbia. Each physician assigned to the VA by the contractor will have first completed all prerequisite credentialing and privileging paperwork to the extent determined necessary by the VA. The qualifications and clinical privileges of such personnel shall also be subject to review by the VA Chief of Staff and approval by the VA Facility Director.

The same section of the Addendum requires personnel assigned by ANC to be "certified in Neurosurgery" and to "provide necessary credentialing documentation to the VA . . ." (See Doc. 12-4, p. 15).

Plaintiffs argue that the above language – i.e. that qualifications and clinical privileges "shall be subject to review" – is a mandatory directive to the VA to conduct a review which would have revealed Dr. Hamel's "status as an impaired physician." Even a cursory reading of the Addendum, however, dispels plaintiffs' claim. The plain language of the above quoted provision, rather than containing a mandatory directive, is simply a reservation by the VA of the right to subject the qualifications and credentials of the personnel provided by ANC to review by the chief of staff. Both the question of whether to conduct a review at all and the extent and parameters of such review are clearly left to the discretion of the VA. While the

discretionary function exception does not apply where mandatory guidelines or regulations are violated, *Colorado Flying Academy, Inc. v. United States*, 724 F.2d 871, 875 (10th Cir. 1984); *Reminga v. United States*, 631 F.2d 449, 456 (6th Cir. 1980); this rule is inapplicable in this case.

Even if the "review" contemplated by the contract addendum is mandatory, the manner and scope of the review itself is unquestionably a discretionary function. The review would necessarily require consideration and weighing of a number of complex factors such as budgetary constraints, the need to assure public safety, the degree of potential harm to patients, the extent to which the contracting personnel had deviated from the required standard of care in the past, whether prior problems of deficiencies had been addressed and to what extent, and the like, all matters which involve the permissible exercise of policy judgment and involve the exercise of political, social, or economic judgment.

Secondly, even if the plaintiffs are correct that the Government may be liable here, even for acts that involve governmental discretion, if a private person could be liable under Tennessee law for the same acts, they cannot establish a duty under state law based on their reliance on *Pierce* and *Mahoney I* is.[5]  Both *Pierce* and

_____

[5] Plaintiffs also suggest that an employer who selects an incompetent contractor might be liable for the negligence of the contractor under Tennessee law, relying on *Quinn v. Railroad*, 94 Tenn. 713, 30 S.W. (1895). While the *Quinn* rule may still be the law in Tennessee, the acts of selecting, training and supervising an independent contractor are discretionary functions under federal law. (See p. 16, *supra*)

*Mahoney I* involve the negligence of an independent contractor under the non-delegable duty doctrine when involved in a hazardous or dangerous activity (electricity in *Pierce* and radioactive and toxic substances in *Mahoney I*). This case involves neither a non-delegable duty nor hazardous or dangerous activity. In addition, plaintiffs offer absolutely no binding or persuasive support for the proposition that the United States had a non-delegable duty in this case.

Furthermore, even if the facts were similar, the soundness of the *Pierce/Mahoney I* rule has been called into serious doubt and this Court would decline to apply it. The Sixth Circuit has never expressly overruled *Mahoney I* and has not addressed the question whether the non-delegable duty rule may be used to avoid an exception to liability under the FTCA.[6] In *Tyson v. United States*, 2007 WL 1840078 (E.D. Mich. June 26, 2007), the question was considered, in a case very similar to this one, by the United States District Court for the Eastern District of Michigan where the court observed:

> Indeed, acceptance of plaintiff's argument [that the United
> States could be held liable for the act of a federal employee
> or independent contractor where the United States had a

---

[6]   The Sixth Circuit has, however, addressed the question of whether the doctrine of non-delegable duty under Tennessee law might apply to the letting of a contract for the carrying of mail. In *Fisher v. United States*, 356 F.2d 706 (6th Cir. 1966), the Sixth Circuit found nothing unusually hazardous about letting a contract to someone for carrying mail in a truck over the highways of the state and refused to apply the doctrine. Likewise, this Court sees nothing unusually hazardous or inherently dangerous in the delivery of medical services. See *Bernie v. United States*, 712 F.2d 1271, 1273-74 (8th Cir. 1983) (rejecting without explanation a claim that medical services were inherently dangerous.)

> non-delegable duty to provide certain services to plaintiff]
> would eviscerate the independent contractor exception and
> the holding of *Logue*, [412 U.S. 521] which considered and
> rejected an argument expressed in terms of a non-delegable
> duty that the Government allegedly owed to a prisoner.
> 412 U.S. at 528 n.7 Accordingly, plaintiff may not skirt the
> control test by claiming that defendant owed him a non-
> delegable duty.

*Tyson*, 2007 WL 1840078 at *3.

Even before the *Tyson* decision, the non-delegable duty rule had been

called into serious question. First of all, Judge Robert L. Taylor, the author of

*Mahoney I*, appears to have significantly curtailed the ruling of *Mahoney I* in a

subsequent opinion in the same case, *Mahoney v. United States*, 220 F. Supp. 823

(E.D. Tenn. 1963) ("*Mahoney II*"). In that case, Judge Taylor stated:

> Negligence and causal relation are prerequisites to recovery
> under the Federal Tort Claims Act . . . . Liability does not
> arise against the Government solely by its ownership of an
> "inherently dangerous commodity" or engaging in an
> "extra–hazardous activity."
>
> The Government cannot be charged with negligence of the
> employees of an independent contractor under the non-
> delegable rule of local law.

*Id.* at 826 (internal citations omitted). Judge Taylor then went on to hold that the

Government may be held liable only where it has retained general control over the

dangerous instrumentality or activity, but even this duty to provide a reasonably safe

working environment does not apply where the work itself is not of an unsafe nature.

*Id.*

Judge Taylor's *Mahoney II* opinion at the very least casts considerable doubt on the precedential value of the broad rule enunciated in *Mahoney I* and in *Pierce* and perhaps abrogates completely the application of the non-delegable duty rule stated in *Mahoney I*.  Likewise, Judge Charles G. Neese, presiding over this Court in this division, also addressed Judge Taylor's *Mahoney I* holding in *Stratton v. United States*, 213 F. Supp. 556 (E.D. Tenn. 1962).  Judge Neese held in that case that,  under the *Dalehite* ruling, the Government cannot be held liable under the dangerous instrumentality non-delegable rule and that the FTCA requires a negligent act or omission by a Government employee; liability does not arise by virtue of either Government ownership of an inherently dangerous commodity or engaging in an ultra–hazardous activity.  As Judge Neese stated:

> It is abundantly true that in certain cases the doctrine of absolute liability, or liability without fault, may require a person to respond in damages for injuries resulting from properly conducted activities if such be deemed 'ultrahazardous'.  In such event the degree of care used in performing the activity is irrelevant to the application of this theory of liability.  <u>But, this rule applies to private persons and not to actions brought against the United States under the Federal Tort Claims Act</u> . . .

*Stratton*, 213 F. Supp. at 560 (emphasis added). [7]

_____

[7]   Judge Neese suggested in his *Stratton* holding that *Mahoney I* may, in fact, have misinterpreted the substantive law of Tennessee, which observation appears to be correct.  Judge Neese's

III. *Conclusion*

Plaintiffs in this case have the burden of establishing that this Court has subject matter jurisdiction over their complaint. They have failed to make such a showing. To the extent the plaintiffs seek to recover from the United States based on the alleged medical negligence of Drs. Hamel and Thomas, the Court finds that its initial holding that these doctors are employees of an independent contractor rather than federal employees, and thus are not subject to the FTCA's waiver of sovereign immunity, was correct. To the extent the plaintiffs seek to hold the United States liable for the acts of an independent contractor under Tennessee state law, their action also fails. To the further extent that the plaintiffs have alleged independent acts of negligence on the part of employees of the United States in the hiring and supervision of its independent contractors, such acts are discretionary in nature and fall within the discretionary function exception to the waiver of governmental liability contained in the FTCA.

This Court therefore lacks subject matter jurisdiction in this matter and the Court concludes that its grant of summary judgment in this case was proper.

opinion also underscores that not every situation which might subject a private person to liability will subject the Government to liability under the FTCA.

Therefore, plaintiffs' motion pursuant to Rule 60(b), Fed. R. Civ. P. [Doc. 16] and plaintiffs' supplemental motion pursuant to Rule 59(e) to alter or amend judgment [Doc. 18] are without merit and are DENIED. Likewise, plaintiffs' motion pursuant to Rule 56(f), Fed. R. Civ. P. [Doc. 20] is DENIED.

SO ORDERED.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE